Will the clerk please call the next case? 223-0180-WC, Scott Osmond, appellant by Kurt Nierman v. Illinois Workers' Compensation Comm'n, East Aurora School District 131, Appalooke, by Lindsay Vanderford. Mr. Nierman, you may proceed. Thank you, Judge. I'm so sorry. I can't see anything on the screen other than the Zoom logo. Okay. We have your video and audio here at this end. Are you in gallery view? If you click on your screen in the upper right-hand corner. I got it. Okay. Very good. Okay. You may proceed. Thanks, Judge. Happy Holidays, Justices. May it please the clerk, counsel, Kurt Nierman representing Scott Osmond, given the short period of time, which topics do you want me to address, if any? Whatever ones you want. Okay. All right. Do you all agree with my void of an issue arguments? I'm done arguing, if so. We let you know what our decision is when we write it. Okay. All right. The award from the arbitrator was void of an issue, meaning the commission decision was void of an issue, meaning we shouldn't be here today on this case because we don't have jurisdiction. The reason it's void of an issue is because there's a two-year deadline within a venue duration limit placed on arbitrators at the request of the Chamber of Commerce and employers. Our arbitrator sat for two and a half years before he issued his decision, a direct violation of the two-year deadline. He also was not confirmed by advice and consent of the Senate to a three-year term at the time that he ruled on our case, meaning he also violated the appointing provision of the Workers' Compact 305-14, Section 14, as well as Article 5, Section 9, Subsection A of the Illinois Constitution. The Senate can do two things to affirm a candidate or a nominee to a arbitrator position. They can either vote them up or down with the majority vote under Section 9A of the Constitution, or they can sit on their hands for 60 days and allow that time period to pass during the session, and then they're deemed confirmed by advice and consent of the Senate. When they don't vote them up and down, when they don't sit on their hands for 60 days, that means the Senate's rejecting the candidate. Arbitrator Friedman was not able to get advice and consent of the Senate for a full three-year period during which he ruled on our case. Section C of Section 9 of Article 5 of the Constitution says, no person rejected by the Senate for an office shall be nominated again for that office at the same session or be appointed to that office during a recess of the Senate, meaning he shouldn't have been there at the time that he ruled on the case. That's the void amnesia argument. From a standpoint of manifest weight, I'm presenting the same manifest weight arguments I presented in prior appeals, number one being that McAllister recently clarified that manifest weight is joined at the hip with preponderance of evidence level. If my proofs are to the point of a preponderance of evidence level and the commission rules against my client on something, that is a manifest weight violation per the Supreme Court in McAllister. As to the arguments specifically, the arbitrator who shouldn't have been there adopted the independent medical evaluation opinions of two defense IMEs. The first one, Dr. Vora, didn't address the compensatory mechanism of injury for adjacent joints, which was a theory that we presented to the commission asking for an award not involving just the ankle but all the compensatory injuries that followed from that ankle and the chronic instability resulting in that ankle. Dr. Vora did not address any of the adjacent ankles or any of the adjacent joints, meaning that the commission relying upon Dr. Vora to deny the adjacent joints was a manifest weight violation. They also relied upon Dr. Noe. Dr. Noe issued his opinions to a illegal standard of proof. They required that something be 90 to 95 percent certain before he would concede the causal proposition that I presented to him, which led to him being able to ignore all of the ongoing progressing joint complaints that are in the medical records, as well as Dr. Burgess's testimony, as well as all the treaters referencing that this 2012 accident was aggravating and the gait changes were aggravating the additional joints, and to adopt Dr. Noe's opinion over that. The other thing is, if you look at some of the questions that I asked Dr. Noe, specifically the one, Dr. Noe denied causation on a nonexistent gap in treatment or nonexistent gap in symptoms. He admitted he didn't care whether the gap really existed when I called him on it, which gutted his framework, his main framework for the analysis. And he never really engaged. He never fully engaged with the knee entries during that lengthy period, meaning he never engaged with our mechanism of injury, which we presented to the commission and which Dr. Burgess supported us causally on. So without a admissible, and I did object to Dr. Noe's testimony and moved it to be stricken, that was never cured during the deposition. So Dr. Vohr didn't address the adjacent joints. Dr. Noe didn't offer probative testimony. And then we see the arbitrator, who shouldn't have been there, taking case law and creating this new legal doctrine. The new legal doctrine is treatment gaps equal no credibility. At least that's the conclusion he drew from them. He drew those conclusions from a case, Centeno. I know you all know this. The man was caught committing fraud, and he was denied his benefits after he'd already been awarded substantial benefits under his false identity. And that was already a final decision. So you can't go back and change that. And then we have a couple of other cases used by the arbitrator and the commission, which do not address the compensatory mechanism of injury, which is what my case is based on. So what I would ask you to do in this case is, first of all, declare the decision void Send me back to the properly sitting arbitrator, and let's have a full hearing on that. Take away the permanency award that was already granted to us, because I think permanency is premature. We're not done treating it. If you're not willing to do that, I encourage you under Supreme Court Rule 366A to complete the causal analysis, which the commission could have done or should have done. And under that rule, you have the authority to complete the analysis, which the did not properly complete. Finally, I hope you all have a happy holidays. And I think that's about it. Unless you have any questions. Counsel, thank you. And to you, counsel as well. Aren't you really asking us to reweigh what the commission considered? What I'm asking you to do is apply the manifest weight of the evidence standard, understanding now that it does reflect a preponderance of the evidence standards, of course, and knock out the IME opinions. I mean, Vora, you don't have to knock out because he didn't address the adjacent joints. No provided non probative testimony, objectively non probative testimony. So without the defense, IME is in the way. I have Burgess causally relating everything through testimony. I have the medical records reflecting all the opinions from the treaters, referencing that the changing gate is aggravating and irritating the adjacent joints. So in that respect, I think 366A, your honor, does permit you to complete the analysis, which the commission did not do. If you're not willing to do that, and I know I don't think you've ever done that before, but if you're not willing to do that, please remand it back so I can get a fair shake from a properly sitting arbitrator and see what Mr. Osman can get out of this. Have we, has this court addressed those, your argument about the standard of review previously? You have, you addressed it in my last case. Becker versus, I can't remember what the name of the company she was working for. We had a 10, 11 minute argument over what the manifest weight standard really required. And you wrote a decision. It's actually United Technologies, Becker versus United Technologies. And you adhered to the common position that the manifest weight standard requires an opposite conclusion to be clearly apparent to the observer. And my position is that I don't think that can possibly be the standard in light of all the Supreme Court decisions I've given you, showing that they're really just looking at the evidence and they're saying, well, is it more likely than not? And I think the McAllister case, I think definitively settles the question because they said you proved your case to proponents of the evidence. Therefore, the commission ruling against you was against the manifest weight of the evidence. Counsel, your argument about the, shall I call it the commission or the arbitrator sitting too long in the same venue? Right. Is there a problem if the arbitrator is serving, say, two years at the end of one term and then two years at the beginning of another? Does that violate the statute? For a properly confirmed candidate, I assume they could game it that way if they wanted to. But I mean, if the real spirit behind the two year deadline was to limit their time in the venue, so they become too chummy with local lawyers like me, then two years would seem to mean two years and then leave. And then later on you can come back when you're properly confirmed to the next three-year term. But he wasn't properly confirmed to the three-year term. So that doesn't save his six years he sat out there, seven years he sat out in my venue. And does the Ethics in Government Act have any implication in this issue with whether or not the arbitrator was properly confirmed? Well, I think it does. And I cited to the Ethics in Government Act, I believe, in either my direct brief or in the reply brief, because it does directly apply. And my position, I think, in that respect was, look, that was passed to assure the citizenry that we were not, that we were appointing properly appointed people and not trying to do a nomination, withdrawal, renomination cycle, which I think led to a major part of the Ethics Act being passed. So here we find ourselves back exactly in that point, trying to recreate that wheel. And we didn't want it. Scott Osmond didn't need it. Is there a requirement in that statute that an acting appointee or that an acting, let's just say arbitrator, who's designated and messaged to the Senate be subject to advice and consent of the Senate within a particular period of time? I didn't see it in there, but perhaps you've studied it more closely. I haven't studied it more closely than that. And I honestly didn't understand the question. Can you ask again? I apologize. Well, sub C is the subsection that applies, correct? And I don't want to catch you off guard. So this is not a test. This is not an oral test. But sub A is for those who are appointed and they do have the advice and consent of the Senate. This is how I read it. Okay. B is for recess appointees. Those don't apply, I would suggest. A and B don't apply. That leaves C where an acting appointee is designated by the governor. Are you with me so far? Are you talking about a temporary appointee? Well, I'm reading the statute. So I'll use the language in the statute. And unless, you know, until I'm educated otherwise, let's put it that way. It says somebody who's designated by the governor to serve as an acting shall not continue in office more than 60 calendar days, unless the governor files a message. And then the access where to send the designation. I believe there is a use site to how the message is communicated to the Senate. But my question is, and then there's some other provisions in there that say, you can't designate a candidate, allow elapse and redesignate. You can't renominate a rejected acting. But what I don't see is the time, like after the governor designates, and then we'll call it messages. Although I'm sure there must be a term of art that I'm not aware of. How long after that do the statutes require the advice and consent of the Senate to take place? I don't know. I'll look at it during council's argument. I'll dig through it and see if I can answer that question or rebuttal. My thought is though, back to the constitution, two ways to confirm them. Neither one was done. Senate rejected it. He shouldn't have been renominated. He shouldn't have been sitting there. And then section 14 of the act, it says they got to be nominated to three-year terms, confirmed to three-year terms. He was nominated for two-year terms. He was nominated for two-month terms. It doesn't make any sense. It just doesn't comply with any of these provisions. So there is the, and I think, I noticed, I think he had a three-year term that, you know, I didn't hear you. Then he was, I believe, nominated. The nomination was withdrawn. That was about a year. Then there was a renomination for two years. So that's, that's three years. And then after that, he was nominated, and I believe got advice and consent for a three-year term. Yeah, that's interesting. He was properly nominated when Rauner was in office. Then Rauner appointed him again. He couldn't get confirmation. 59 days in, they withdrew his nomination. So he wouldn't get, yes, he couldn't get confirmation. But then it came back, true? Yeah, they renominated him for two years. Couldn't get that. Came back. Renominated him again for another two months. So my position is the term runs with the person being placed into the position. So when he's nominated, three years applies to him, not arbitrarily to some position at the commission, because we've already had one year where he was acting before they withdrew it. And then when they renominate, it's another three-year term. It should be for a three-year term per 14, Section 14. Thank you, counsel. Thank you. Any further questions from the bench? No? Okay. Okay, thank you. Mr. Nerman, you'll have time in reply. Thank you, Judge. Ms. Vanderford, you may respond. May it please the court, counsel. My name is Lindsay Vanderford. I'm appearing on behalf of the Apley East Aurora School District 131. There are four issues before this court today. The first is whether the IWCC decision is void based on violation of venue duration limits. The second is whether the decision is void based on lack of Senate confirmation. The third, the appropriate standard of review. And the fourth, whether the decision affirming the commission's decision against is against the manifest weight of the evidence. Counsel, counsel, on that last issue, you got to remember something. We're reviewing the decision of the commission, not the circuit court's decision. The question is whether the commission's decision is against the manifest weight of the evidence, not whether the circuit court's decision is against. Thank you. As it pertains to the first issue, whether the IWCC decision is void based on a violation of venue duration limits, I would point out the timeline as mentioned in the brief. Arbitrator Freeman was sitting back-to-back terms. At the time that our case was tried, he was not in the Wien venue for longer than two years of his three-year term. The statute terms at that time, they were later amended, but the statute terms at that time said no arbitrator shall hear cases in any county other than Cook County for more than two years in each three-year term specifically. The circuit court judge at the level below where we first started discussing this issue was the one who suggested an investigation into whether these were back-to-back terms and how long arbitrator Freeman had been sitting. And that was when we found that these back-to-back terms were the way that arbitrator Freeman was appointed. Furthermore, he was never rejected. There was never any sort of rejection. And the way to obtain a rejection is to actually send to the rejection committee, just like it is to send to the information committee. Could you adjust your sound or something? There's a lot of echo there, at least that's coming through. It's like you're in a can. Oh, no. So I don't know if your volume is too high or... Maybe. Is anyone on the bench experiencing the same? It's a little bit echoey, but... Yeah, it's a feedback problem. I turned the volume down. Is that helpful? I think that so far, it seems like it might have helped that feedback. Okay. So when we investigated this per the circuit court judge's instruction, that was when we found out that arbitrator Freeman was, in fact, sitting in these back-to-back terms and that he had not during the second term been sitting for longer than two years. And thus was not in violation of the statute at that time. The statute was amended recently to reflect that an arbitrator could not hear cases in any county other than Cook for more than four years. That's ever, right? So that's kind of the difference between those two terms. And that's where our spirit of the act argument is coming from. Furthermore, there's been an argument that there's no avenue to change arbitrators. And that's just not the case. Counsel could have asked for arbitrator Freeman to recuse himself, could have filed a motion, could have made some objection and never did. There was no objection to arbitrator Freeman hearing this case until his decision came out. The Daniels versus Industrial Commission case just doesn't apply. Are you saying that opposing counsel forfeited the requirements of the act by not objecting? No, I'm just pointing out the prejudice really that is shown here is there was no problem with arbitrator Freeman. There wasn't an issue with him hearing any cases. This was never anything that was raised. And so there was never any chance for for this to be argued or discussed prior to while prior to it being brought up in the circuit court. Is that necessary? I just I believe that it shows prejudice. I would argue that it shows prejudice. I don't I don't think it's absolutely necessary, but I think it's something that should really be considered. Okay, that was also when this Daniels versus Industrial Commission case was brought up. And essentially, in that case, a commission decision was found to be void based on the improper appointment of two of the members of that panel of the commission. But this case, it doesn't involve an improper appointment. All the proper hoops were jumped through. T's were crossed, eyes were dotted when arbitrator Freeman was appointed. There could be no question or dispute as to whether he was properly appointed or not. And I think that's something that needs to be pointed out here is that arbitrator Freedman's appointment being withdrawn. I don't agree with the reason for that. And I think it's speculative for counsel to argue that the reason was because the 60 days was about to pass. This actually happened to nine other arbitrators at exactly the same time, where when the gubernatorial change was happening, that's how the appointments were withdrawn. And then they were put back in just days later. As it pertains to the second issue, whether the IWCC decision is void based on lack of Senate confirmation. To make it crystal clear, the legal effect of an assignment letter is the power to act under the color of the law. We're not arguing arbitrator Freedman was a temporary appointee. We're arguing he was an acting appointee, properly appointed with a proper assignment. Furthermore, arbitrator Freedman is not a quote, unquote, unconfirmable candidate as alleged. He was eventually confirmed as I think we just discussed earlier. Also, we should look to the current conditions of the commission. The arbitrator mentioned in our brief with evidence submitted to the circuit court, Francis Brady, still has not been confirmed to this day. And his assignment letter was put in March 21 of 2023. He's currently an acting arbitrator. The other arbitrator mentioned in our brief, Effie James, also has not been confirmed, though her assignment letter was sent to the Senate on June 16 of 2023. She is also an acting arbitrator. The prayer for a remand to the IWC. Help me out there. Yeah, so is that like pattern and practice you're trying to argue? Well, I have seen where I randomly started looking up other officers of the court, and which, of course, is what this case required. And I did find. So one of the commissioners who was recently appointed, Amy Lee Semenovich, she was actually confirmed within a couple of weeks of her appointment letter. These two arbitrators, Francis Brady and Effie James, they were both appointed at the same time. And that was back in the early quarter of this year. And both of them have not been appoint, or I'm sorry, have not been confirmed. And if I could just point out the prayer for remand to the IWCC for hearing by a legally sitting arbitrator is problematic if we're going to proceed under the lack of confirmation argument. Our case was tried in zone six. If it were remanded to zone six, it would be assigned to one of the three arbitrators that is sitting in zone six. My presumption is that would not happen until after January of 2024. In January of 2024, the three arbitrators that are sitting in zone six are arbitrators Salini, Hegarty, and Seale. Arbitrator Seale, his appointment letter went in in July of this year. He still also has not been confirmed. May I, excuse me for interrupting, but just to, maybe you're going to hit it, but what is the deadline, if any, for the same question I asked your opposing counsel? Yes, there is no specific deadline that's in anything that I have read at all. For the Senate to give advice and consent? Correct. Okay. Does it, is there an issue if, and I'm not suggesting that happened here, I haven't determined that, but if there's a session lapse, if it's, you know, a legislative session ends, then? So, this is what Mr. Nierman was kind of speaking to when he was talking about the 60, he said 60 days, it's 60 session days, essentially, that have to pass in order for someone to be deemed confirmed by default. And so, when those 60 session days pass, that's when that default confirmation comes through. So, I mean, there's a backstop of some sort. It's just not a direction, essentially, to the Senate to say, you have to make a decision within a certain period of time. It's that if they don't, then the confirmation is by default. Thanks, counsel. Finally, with regard to the second issue, if arbitrator Friedman is so respondent-friendly as to overlook the merits of the case, where's the evidence? Where are the commission decisions overturning Friedman for his alleged respondent-friendly decisions? They just aren't here. As it pertains to the third issue, the appropriate standard of review. Can I ask what that's going to, that statement that you're making? Respondent-friendly stuff? Yes. I believe within the appellate argument, within the brief, it basically says that arbitrator Friedman was very respondent-friendly in his decision, and that is the reason why this moving around should have happened. And I guess I thought if someone were that terrible of an arbitrator that they found for a certain side all the time, that there would definitely be some commission decisions that came down hard against that type of arbitration, and that that person would eventually be thrown out and not asked to return as an arbitrator. Is that really what we're here for? I mean, what are the issues? What does that go to? It's a procedural legal issue, isn't it? Yeah. Yes, I'm just arguing, I guess, against what was argued in the appellant brief. Okay. So, I'm sorry, back to the standard of review. No cases that were cited in the appellant's brief showed the commission reviewing questions of fact on any sort of a de novo basis. All of the cases cited reviewing questions of fact as manifest weight, and every single one of them mentioned in some form the compelling of an opposite conclusion. Paisano versus IWCC cited in the appellant's brief specifically states, a finding of a fact is against the manifest weight of evidence only if the opposite conclusion is clearly apparent. This was used to support the idea of a vigorous review of the IWCC, but then in the very next paragraph, it says the opposite conclusion interpretation is incorrect. Even McAllister says, the commission's factual findings are against the manifest weight of evidence only when an opposite conclusion is clearly apparent. That is when no rational trier of fact could have agreed with the agency. And in that case, the court relied on that to say there's no evidence in the record that rebuts claimant's testimony that one of his job duties was to arrange food in the cooler. That is essentially what they're applying there, and it just seems to me that the manifest weight standard has been clearly established, not really changed by McAllister, and not open for interpretation as the appellant is arguing. As to the fourth issue, whether the decision on the merits made by the commission is against the manifest weight of the evidence. This case was clearly decided considering all evidence taken in concert. This is the only issue we should really be discussing today. Mr. Osmond was released by his treating orthopedic foot specialist, Dr. Lee. Dr. Vora, a treating orthopedic foot specialist, agreed with a release to full duty, agreed with the treating doctor. The only causal connection opinion in this case was given by Dr. Burgess, a podiatrist who only saw petitioner a few times and never examined his knees or his hips. For the knees and hips, Mr. Osmond was examined by an orthopedic specialist who specializes in the knees and hips, Dr. Noe. Dr. Noe was the only person to give an expert opinion with regard to the knees and hips. He was not making a crazy claim any more than a doctor that is 100% positive that a patient broke his leg. For some reason, the appellant cites Souter v. IWCC. In that case, a worker's compensation claimant had the burden of proof by a preponderance of the evidence that her injury arose out of in the course of her employment. This case says nothing about a doctor's burden of proof, and no case law is provided stating that a doctor's burden of proof is 51% or greater. Okay, you want to wrap that up, Ms. Vandervoort? In conclusion, the IWCC decision is not void for any reason, nor was it against the manifest weight of the evidence. We would ask that it therefore be affirmed. Questions from the bench? Okay, thank you, Ms. Vandervoort. Mr. Newman, you may reply. Thank you. Justices, any questions before I jump into the Ethics Act? We just pulled it up. Take a look at it. Okay, the Ethics Act. So the Ethics Act seems to trace or track Article 5, Section 9 of the Constitution. 60 days is the period of time when someone can sit in these positions where they either are confirmed or they're not. The Senate, if they allowed to go past 60 Senate session days, they're automatically confirmed. Friedman couldn't get that support to even have people sit on their hands and not vote on it for 60 days. He got pulled on the 59th day, the first time, for the first period during this three-year term that we're talking about. So what the provision... Pulled by whom? Pulled by his supporter, by the nominator. Nominator. Yeah, because they knew that he couldn't get... The only reason to pull someone to day 59 and not allow him to go to day 60 where he would be deemed confirmed is he couldn't get support. He didn't have support of the Senate. They wouldn't have voted him up. They wouldn't support him to even allow him to sit on their hands for 60 days. They pull him on the day right before it ends. Just renominate. It's a renomination cycle. That's what the Ethics Act was passed, in large part, I understand, to try and take care of and avoid and eliminate. So if you're looking at the Ethics Act, Section C that you were talking about, Justice Mullen, it says, no person who's designated by the governor to serve as an acting appointee by any office which requires advice and consent of the Senate, which it does under 14, shall be designated again as an acting appointee for that office at the same session of the Senate, subject to the provisions of this section. So again, serial nomination, withdrawal, renomination is just not appropriate if it's within the same Senate session under that provision. That also tracks with Section 9 of the Constitution, which says, you know, Senate's either got to vote on him or just sit on their hands for 60 days. He never got to that point. Therefore, everything defaults back to what Section 14 is, is the governing statute, which governs the appointment of these arbitrators for these positions. Section 14 specifically tells us, you got to appoint these people. The governor can appoint with the advice and consent of the Senate. Okay, he never got advice and consent. So violation one. Secondly, there after 2011, every appointee is going to be appointed to a three-year term. He never got appointed to a three-year term during that three-year duration, during which he ruled on my case. So that's violation number two. And then violation three, which I don't think you're impressed with, maybe none of it, but we got a two-year duration violation. So for those various reasons, I think it's void of an issue. I would ask that it be returned to the commission for a hearing by a properly sitting and confirmed arbitrator. The fact that other arbitrators are in this spot, I think it's irrelevant. You know, to Mr. Arbitrator Friedman's fate. And though there may have been nine at the time it happened to him, when there was a change between Rauner's administration and Pritzker's administration, the other eight all got their confirmations. Friedman didn't get his confirmation until four years later. So I would like to have my case heard in compliance with the Constitution and compliance with Section 14 of the Act and compliance with Section C of the Ethics Act. 5 ILCS 423-840-C. And I would ask it to be reversed for those reasons. And if you're going manifest weight on this, I lay out in detail why it's a manifest weight violation and why my client didn't get a fair hearing in this case. Thank you again and have a happy holiday. Yeah, questions from the bench? Okay, well, thank you, counsel, both for your arguments in this manner. This afternoon, it will be taken under advisement and a written disposition shall issue.